## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| KARIN SANDQUIST, individually and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>THE TJX COMPANIES, INC. & MARMAXX OPERATING CORP., d/b/a T.J. MAXX,<br><br>        Defendants. | **CLASS ACTION COMPLAINT**<br><br>**Case No.:**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>CLASS ACTION COMPLAINT</u>

1.　　Plaintiff Karin Sandquist ("<u>Plaintiff</u>"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against defendants THE TJX COMPANIES, INC., and MARMAXX OPERATING CORP. d/b/a T.J. Maxx ("<u>Defendants</u>"), for their systematic practice of charging and collecting Florida sales tax on purchases of tax-exempt Baby and Toddler Products (defined below) in their T.J. Maxx stores. The plaintiff class (the "<u>Class</u>") consists of the customers that Defendants overcharged under guise of sales tax, from the period beginning July 1, 2023 to the present (the "<u>Class Period</u>").  Plaintiff alleges as follows:

## NATURE OF THE ACTION

2.      Defendants systematically charge and collect Florida sales tax from customers buying certain Baby and Toddler Products at their Florida stores. The problem is: Baby and Toddler Products are exempt from Florida sales tax. (As used herein, the term "Baby and Toddler Products" has the meaning set forth in Fla. Stat. § 212.08(7)(qqq), which definition includes, among other things, baby and toddler clothing (size 5T and smaller), apparel, and shoes (size 13T and smaller) and other categories of products intended for and marketed for babies and toddlers.)[1] During a purchase transaction at one of Defendants' stores, the customer receives a receipt, on which Defendants' point-of-sale system has printed an itemized charge for "**FL 7.000% Sales Tax**" and accordingly, a 7% charge has been added to the customer's subtotal.

3.      In this systematic error, buyers of Baby and Toddler Products bear yet another heavy cost.

---

[1] The sales tax exemption applies to other products intended for and marketed for babies and toddlers such as, baby cribs, exercisers, strollers, and changing tables. The following baby and toddler clothing is also exempted: (a) baby and toddler clothing, apparel, and shoes primarily intended for and marketed for children age 5 or younger, and (b) baby and toddler clothing size 5T and smaller and baby and toddler shoes size 13T and smaller are presumed to be primarily intended for and marketed for children age 5 or younger.  See Chapter 2023-157, Laws of Florida & Fla. Stat.§ 212.08(7)(qqq).

4.      Defendants have, among other things, violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Defendants are also separately liable under common law claims of fraudulent misrepresentation, unjust enrichment, breach of contract, unconscionability, conversion, negligent misrepresentation and negligence.

5.      Plaintiff seeks an order: certifying this action as a Class Action and appointing Plaintiff and her legal counsel to represent the Class; awarding repayment, with interest, of the wrongfully charged sums purported to be sales tax on Baby and Toddler Products collected from members of the proposed Class, any other actual damages, compensatory damages, statutory damages, statutory penalties, and punitive damages, and such injunctive or other equitable relief necessary to prevent further misconduct.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") codified as 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; the number of members of the proposed Class exceeds 100; and Plaintiff and members of the proposed Class are citizens of a state different than Defendants.

7.     This Court has personal jurisdiction over Defendants because Defendants' T.J. Maxx stores engaged in the collection of sales taxes on tax exempt Baby and Toddler Products in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff suffered injury as a result of Defendants' acts in this District, many of the transactions giving rise to this action occurred in this District, and Defendants conduct substantial business in this District. Defendants intentionally availed themselves of this District's laws and markets of this district, and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

9.     Plaintiff Karin Sandquist was at all times relevant hereto a resident of Miami-Dade County, Florida when she purchased tax exempt Baby and Toddler Products from Defendants.

10.    Defendant THE TJX COMPANIES, INC. is a Delaware corporation, and Defendant MARMAXX OPERATING CORP. is a Virginia corporation.  Each Defendant has its headquarters and principal place of business at 770 Cochituate Road, Framingham, Massachusetts 01701, and each does business in Florida with citizens of Florida and throughout the United States.

11.     Defendants have retail stores across the United States, doing business as TJ Maxx, Marshalls, and other brands, with TJ Maxx having over 200 stores in the State of Florida (and over 2,500 stores nationwide).

## FACTUAL ALLEGATIONS

I.     **DEFENDANTS CHARGED AND COLLECTED SALES TAX FROM PLAINTIFF ON EXEMPT BABY AND TODDLER ITEMS**

12.     Defendants sell a variety of Baby and Toddler Products including, but not limited to, baby and toddler clothing, apparel, shoes and other categories of products primarily intended for and marketed for baby and toddler aged children. Defendants market, offer, and sell these Baby and Toddler Products to consumers in Florida.

13.     Despite Florida's explicit tax exemption for these products, Defendants continue to charge Florida consumers sales and use tax on Baby and Toddler Product purchases.  As a result, Defendants are overcharging Plaintiff and members of the Class by collecting taxes on these exempt products. By printing on the customer's receipt, a line item adding "FL Sales Tax" to the subtotal, Defendants' practices misled Florida consumers to believe that a sales and use tax was owed on products which were exempt from such taxes.

14.     On February 12, 2026, plaintiff purchased, at the TJ Maxx located at 12163 Biscayne Blvd, North Miami, FL 33181, an article of toddler clothing sized 4

from Defendants for the aggregate price of $13.90. The printed receipt for the transaction contains the following itemizations: clothing item description ($12.99); "Subtotal" ($12.99); *"FL 7.000% Sales Tax" ($0.91)* (emphasis added); Total ($13.90). Defendants thus misrepresented the 7% charge, proffering it as Florida Sales tax, and collected payment from Plaintiff, who relied on Defendants' misrepresentations to her pecuniary harm. Notably, at the time of Plaintiff's purchase Florida's Baby and Toddler product tax exemption had been in effect for nearly 3 years.

## II.   FLORIDA IMPLEMENTED TAX EXEMPTIONS TO HELP FAMILIES

15.   In 2022, the Florida State Legislature implemented a temporary sale and use tax exemption for diapers and baby and toddler clothing, apparel, and shoes. The temporary exemption was in effect from July 1, 2022 through June 30, 2023.

16.   Subsequently, the Florida State Legislature in conjunction with Florida Governor Ron DeSantis extended the exemption permanently and expanded the tax exemption to include a broader range of Baby and Toddler Products including: baby and toddler clothing, apparel, and shoes, baby cribs, baby playpens, baby play yards, baby exercisers, baby jumpers, bouncer seats, baby swings, baby monitors, baby safety gates, baby strollers, baby wipes, bicycle child carrier seats and trailers designed for carrying young children, breast pumps,

bottle sterilizers, baby bottles and nipples, pacifiers, and teething rings, changing tables and changing pads, child safety cabinet locks and latches and electrical socket covers, and children's diapers.

17.    The expanded Baby and Toddler Product tax exemption went into effect on July 1, 2023.

18.    The stated purpose of Florida's expanded Baby and Toddler Product tax exemption (part of a larger tax relief plan) was "aimed at providing families with $2.7 billion in tax relief during the 2023-2024 fiscal year."

19.    Senate Democratic Leader Lauren Book stated that the 2022 exemption (which subsequently became part of the permanent exemption) was "[a] true difference-maker for families with young kids across our state" and that "this tax relief [would] go a long way to help those who need it most."[2]

20.    Florida Governor Ron Desantis stated that he will "continue to push smart fiscal policy that will allow Florida families to keep more of their hard-earned money in their pockets. Stronger families make a stronger Florida."[3]

---

[2]    https://www.wfla.com/news/florida/diapers-other-baby-and-toddler-products-permanently-tax-free-under-new-florida-law/ (last accessed Feb. 22, 2026)

[3]    https://www.flgov.com/eog/news/press/2023/governor-ron-desantis-highlights-largest-tax-relief-plan-floridas-history (last accessed Feb. 22, 2026)

## III.   DEFENDANTS SELL BABY AND TODDLER PRODUCTS SUBJECT TO EXEMPTION

21.     Defendants sell a variety of these Baby and Toddler Products including, but not limited to, baby and toddler clothing, apparel, and shoes. Defendants have sold these products at all relevant times and for many years prior to the relevant times.

22.     These products are Baby and Toddler Products subject to sales and use tax exemption as explicitly stated in the language of the statute. *See* Title XIV Section 212.08(7), *et seq.*

## IV.   DEFENDANTS UNLAWFULLY CHARGE AND COLLECT SALES AND USE TAX ON EXEMPTED BABY AND TODDLER PRODUCTS

23.     As explained above, Florida enacted an explicit tax exemption for Baby and Toddler Products. Defendants market, distribute, and sell Baby and Toddler Products in Florida. Nonetheless, Defendants routinely charge and collect sales and use tax on Baby and Toddler Products from Florida consumers thereby overcharging consumers.

24.     Indeed, Defendants routinely engage in practices that violate the Florida legislature's tax exemption in opposition to the Florida State Government's stated public policy goal of assisting families.

25.     Specifically, Defendants overcharged Plaintiff sales tax when Plaintiff purchased toddler clothing from Defendants' store on or around February 12, 2026.

26.     Plaintiff has a receipt generated and provided by a store owned by Defendants upon the purchase of the toddler clothing. The receipt indicates a charge identified as a sales tax that was charged and collected from Plaintiff for the product, despite the product explicitly being exempted from sales tax.

27.     Upon information and belief, Defendants maintain a point-of-sale system that calculates charges to be paid in sales transactions, including sales and use taxes for products, including for tax exempt Baby and Toddler Products, as reflected in Plaintiff's receipt.

28.     Upon information and belief, Defendants use a point-of-sale or other sales system through which Defendants' employees and agents process retail sales at their Florida stores. Defendants' point-of-sale system is configured by Defendants' agents and employees to automatically calculate and apply sales and use tax for products, including tax exempt Baby and Toddler Products, as reflected in Plaintiff's receipt. Defendants failed to properly configure their point-of-sale system to make calculations consistent with applicable sales tax laws.

29.     Accordingly, upon information and belief, Defendants automatically and systematically overcharged the customers purchasing Baby and Toddler Products in Florida.

## V.    DEFENDANTS ROUTINELY OVERCHARGE FLORIDA CONSUMERS FOR BABY AND TODDLER PRODUCTS

### A.    Consumers Reasonably Rely on Businesses to Calculate Proper Sales Tax

30.     Sales tax is traditionally collected from the purchaser by the business at the point of sale in the form of an additional charge added to the purchase price. Sales tax is collected in this manner because lawmakers wanted to minimize the burden of tax compliance on the individual taxpayers, who cannot be reasonably expected to learn the applicable taxes for every item they purchase.

31.     For each purchase, the sales tax is required to be itemized separately on the sales receipt, notifying consumers of the tax they paid than the price of the product itself.

### B.    Defendants Portrayed the Charge as a Legally Mandated Tax

32.     Defendants misrepresented the nature of the charge by presenting it as a legally mandated tax. Plaintiff and members of the Class relied on Defendants' representation, causing them to pay amounts that were not lawfully owed.

33.     Defendants failed to provide Florida consumers any notice or indication that the payment of sales and use tax was not required for Baby and Toddler Products.

34.     Consumers have no obligation to learn the tax code prior to engaging in retail transactions. In fact, sales tax is collected at the time of purchase by the retailer on behalf of the consumer in order to ensure the correct amount of tax is collected. Florida has established a statutory and regulatory scheme that relies on businesses properly collecting and remitting sales tax to the state. *See* Fla. Stat. Ann. § 212.01 *et seq*. Defendants have a duty established by the tax code to collect the sales tax on each transaction correctly. Consumers, such as Plaintiff, reasonably rely on retailers, such as Defendants, to properly collect and remit the sales tax on their behalf.

### C.     Consumers Could Not Reasonably Avoid the Improper Charges

35.     Defendants' improper collection of sales and use tax on the purchased Baby and Toddler Products was not reasonably avoidable by Florida consumers. Defendants provide no notice of the amount charged for sales and use tax collection until a consumer completes the checkout process and receives a receipt. Even if Defendants purportedly provided some notice to consumers, such notice would be insufficient and would require consumers to know the tax code.

## VI.     DEFENDANTS BREACHED THE TERMS OF THEIR SALES AGREEMENT WITH CONSUMERS

### A.     Retail Transactions Establish an Implied-In-Fact Contract

36.     Under Florida law, the performance of the parties in a retail transaction establishes an implied-in-fact contract. Mutual assent is established

when the retailer provides the product at a specified price, and the consumer pays the demanded price for the product.

37.     This implied-in-fact contract is memorialized in the sales receipt. In this case, the receipt shows Plaintiff and members of the Class agreed to pay the retail price of the product in addition to any *required* taxes, as calculated by Defendants.

**B.     The Charges Exceed the Terms of the Implied-In-Fact Contract**

38.     The implied-in-fact contract entered into during each retail transaction requires consumers to pay their *legally mandated* tax burden, as identified by the retailer.

39.     The amount of tax that may be charged for each transaction is set by the tax code, and the agreement does not authorize the retailer to impose an additional tax burden above what is established as required under the tax code.

40.     Defendants decided to ignore both the tax code and the implied-in-fact contract and impose an additional and unlawful tax on Baby and Toddler Products.

41.     The additional and unlawful charge constitutes a breach of the implied-in-fact contract. Plaintiff and members of the Class agreed to pay required taxes. The additional amount charged by Defendants harm customers by causing them to pay more for a product than they agreed to.

### C.      Defendants Unjustly Overcharged Florida Consumers Purchasing Baby and Toddler Products

42.      Defendants unfairly, unjustly, and deceptively overcharged Florida consumers sales tax on tax exempt Baby and Toddler Products. Defendants' routine practice directly violates Florida law.

43.      Indeed, Defendants' routine practice of overcharging Florida consumers undermines the spirit of the retail sales agreement, denying consumers the benefit of their bargained for price by inflating the associated tax burden beyond the legal requirement.

### VII.    DEFENDANTS HAVE NOT REIMBURSED ANY OF THEIR CUSTOMERS

### A.      Defendants Have Not Provided Any Refund

44.      Despite knowing that they have unlawfully collected monies from consumers and despite their ability to easily return the impermissibly collected funds, Defendants have failed to return the sales tax overcharge to their customers. Moreover, any refund must be accompanied by payment for applicable interest thereon.

45.      Defendants' decision to enrich themselves has come at the expense of Plaintiff and members of the Class, forcing them to bring the present action.

### B.      Defendants Have the Ability to Provide Refunds

46.      Defendants have the ability to refund Plaintiff and members of the Class the impermissibly collected sales tax.

47. Not only do Defendants have records of each transaction and the amount of tax collected, upon information and belief, Defendants also retain sufficient contact and payment information to effectuate such refunds.

48. Moreover, for any charge transacted by credit card, the reimbursement would cost relatively little to provide.

## CLASS ACTION ALLEGATIONS

49. Plaintiff brings this action individually and on behalf of the following Class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons who were charged sales tax on tax-exempt Baby and Toddler Products at a T.J. Maxx retail store in Florida during the period from July 1, 2023 to the present, while being residents of Florida.

50. Plaintiff reserves the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

51. Excluded from the Class are: (1) any Judge or Magistrate presiding over this action, any members of their immediate families, and any of their staff; (2) the Defendants, Defendants' subsidiaries, affiliates, parents, successors, predecessors, any entities in which the Defendants has a controlling interest, and their current or former employees, officers, and directors from July 1, 2023 to present; and (3) Plaintiff's counsel and Defendants' counsel.

52.     <u>Numerosity (Rule 23(a)(1))</u>:   The exact number of members of the Class is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of tens of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendants' records. The members of the Class may be notified of the pendency of this action by mail or email, internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

53.     <u>Predominant Common Questions (Rule 23(a)(2))</u>:   The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, without limitation:

a.      Whether Defendants charged and collected sales and use tax on Baby and Toddler Products sold since July 1, 2023;

b.      Whether Defendants knew or should have known that the Baby and Toddler Products they sold since July 1, 2023 should not have been subject to tax pursuant to Title XIV Section 212.08(7), *et seq.*;

c.      Whether Defendants took steps to prevent the charging and collection of sales and use tax on tax exempt Baby and Toddler products purchased by Florida consumers;

d.    Whether Defendants wrongfully represented and continues to represent that sales and use tax are owed on their Baby and Toddler Products purchased by Florida consumers;

e.    Whether Defendants' representations are false, deceptive, and misleading;

f.    Whether Defendants had knowledge that those representations were likely to deceive a reasonable consumer;

g.    Whether Defendants had knowledge that those representations were false, unfair, deceptive, or misleading;

h.    Whether Defendants continued to disseminate those false, unfair, misleading, and deceptive representations;

i.    Whether Defendants made the representations with the intention that Plaintiff rely on them;

j.    Whether Defendants violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq* as alleged herein;

k.    Whether Defendants were unjustly enriched;

l.    Whether Defendants entered into an implied contract with Plaintiff during the sale of the Baby and Toddler Products;

m.    Whether the charge of sales tax not owed under Title XIV Section 212.08(7), *et seq.* violated the implied contract Defendants entered into

with Plaintiff for the sale and purchase of the Baby and Toddler Products;

n.   Whether the charge of sales tax not owed under Title XIV Section 212.08(7), *et seq.* and/or failure to disclose the charge constitutes an unconscionable provision of the implied contract Defendants entered into with Plaintiff during the sale of the Baby and Toddler Products;

o.   Whether Defendants converted Plaintiff property through the charge and collection of sales tax not owed under Title XIV Section 212.08(7), *et seq.*; and

p.   The nature of relief, including damages and equitable relief, to which Plaintiff and members of the Class are entitled.

54.   Typicality of Claims (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class members, purchased Defendants' Baby and Toddler Products, suffered the same harm caused by Defendants' unlawful charge, suffered the same proportion of damages as a result of that purchase, and seeks the same relief as the proposed Class members.

55.   Adequacy of Representation (Rule 23(a)(4)): Plaintiff adequately represents the Class because Plaintiff's interests do not conflict with the interests of the members of the Class, and Plaintiff has retained counsel competent and experienced in complex class action and consumer litigation.

56.     Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the members of the Class.

57.     <u>Superiority (Rule 23(b)(3))</u>: A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendants because the damages suffered by Plaintiff and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

### Declaratory Relief
### (Fed. R. Civ. P. 23(b)(1) and (2))

58.     In the alternative, this action may properly be maintained as a class action because:

   a.     the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants; or

   b.     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual

members of the Class which would, as a practical matter, be

dispositive of the interests of other members of the Class not parties

to the adjudications, or substantially impair or impede their ability to

protect their interests; or

c.     Defendants have acted or refused to act on grounds generally

applicable to the Class, thereby making appropriate final injunctive

or corresponding declaratory relief with respect to the Class as a

whole.

### Issue Certification (Fed. R. Civ. P. 23(c)(4))

59.     In the alternative, the common questions of fact and law, set forth

above, are appropriate for issue certification on behalf of the proposed Class.

### CAUSES OF ACTION

### COUNT I
### FRAUDULENT MISREPRESENTATION
*(On behalf of Plaintiff and the Class against Defendants)*

60.     Plaintiff incorporates by reference paragraphs 1-59 of this Complaint

and restates them as if fully set forth herein.

61.     Plaintiff brings this claim on behalf of herself and the Class.

62.     Defendants directly, or through their agents and employees, made

false representations, concealments, and non-disclosures to Plaintiff and members

of the Class about the sales tax charged on Baby and Toddler Products purchased in Florida.

63.     Defendants intentionally, knowingly, and/or recklessly made these misrepresentations inducing Plaintiff and members of the Class to pay more when purchasing Defendants' Baby and Toddler Products.

64.     In making these false, misleading, and deceptive representations and omissions, Defendants knew that consumers would pay more when purchasing their products. Defendants intended for these statements to induce consumers to purchase their Baby and Toddler Products for a higher price. Consumers who purchased Baby and Toddler Products from Defendants paid a premium for these products over what consumers would have paid had Defendants disclosed that no sales tax was owed under Title XIV Section 212.08(7), *et seq.*

65.     Defendants owed a duty of care to Plaintiff and members of the Class in providing accurate information, as evidenced by Defendants' pecuniary interest in the transactions. Defendants created a special relationship with Plaintiff and members of the Class through representations regarding the tax burden associated with their products.

66.     As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive statements, representations, and omissions, Defendants

injured Plaintiff and members of the Class in that they purchased and paid a premium price for the Baby and Toddler Products.

67.     In making misrepresentations of fact and omissions to Plaintiff and members of the Class, Defendants have failed to fulfill their duty to disclose material facts about the price they charged for their Baby and Toddler Products.

68.     The failure to disclose the true nature of the additional charge was caused by the deliberate and willful misconduct of Defendants.

69.     Defendants, in making these misrepresentations and omissions, and in doing the acts alleged above, knew that the misrepresentations were not true.

70.     Defendants made and intended the misrepresentations to induce the reliance of Plaintiff and Class members.

71.     Defendants, through their point-of-sale system and printed receipts, systematically and intentionally presented unlawful charges as legally required sales tax to consumers, including Plaintiff and members of the Class, at every T.J. Maxx store in Florida.

72.     Plaintiff and members of the Class did in fact rely on these misrepresentations and purchased Defendants' Baby and Toddler Products to their detriment. Given the deceptive manner in which Defendants represented the additional charge for the Baby and Toddler Products, Plaintiff's and members of the Class's reliance on Defendants' misrepresentations were justifiable.

73.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have suffered actual damages. Plaintiff and members of the Class purchased products that are worth less than the price they paid, and they would have paid less for the Baby and Toddler Products had they known the additional charge was not legally mandated sales tax.

74.      Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

**COUNT II**
**UNJUST ENRICHMENT**
***(On behalf of the Plaintiff and the Class against Defendants)***

75.     Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

76.     Plaintiff brings this claim on behalf of herself and the Class.

77.     Plaintiff and the other members of the Class conferred a benefit on Defendants by purchasing Baby and Toddler Products and paying what they believed to be sales tax on such products.

78.     Defendants received a benefit in the form of additional revenue from Plaintiff's and Class Members' purchases. Plaintiff and Class Members suffered a detriment in the additional, unlawful funds they paid for Baby and Toddler Products.

79.     On information and belief, by collecting improper sales tax on the purchases of Defendants' Baby and Toddler Products by Plaintiff and the other members of the Class, Defendants unjustly enriched themselves by collecting such sales tax revenue and earning interest thereon. Moreover, at the expense of Plaintiff and the other members of the Class, Defendants acted for their own pecuniary interests in avoiding the expenses of modifying their point-of-sale systems and databases and training their employees to correct their sales tax assessment and collection practices.

80.     Retention of those monies under these circumstances is unjust, inequitable, and injurious to Plaintiff because Defendants' charging of the tax was *pro tanto* misleading and financially harmful to Plaintiff and the other members of the Class.

81.     Plaintiff and members of the Class would have paid less money for the Baby and Toddler Products had they known that no sales tax was owed on their purchases.

82.     It would be inequitable for Defendants to retain the benefit of their practice of unlawfully charging sales taxes at the expense of Plaintiff and the other Class members.

83.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and

inequitable, Defendants must pay restitution to Plaintiff and all members of the putative class for unjust enrichment, as ordered by the Court.

## COUNT III
### BREACH OF CONTRACT
#### *(On Behalf of Plaintiff and the Class against Defendants)*

84.     Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

85.     Plaintiff brings this claim on behalf of herself and the Class.

86.     Under Florida law, the covenant of good faith and fair dealing applies to every contract. Good faith and fair dealing means preserving the spirit—not merely the letter—of the bargain.

87.     The parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitutes examples of bad faith in the performance of contracts.

88.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his or her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are evasion of the spirit of the bargain, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

89.     Defendants have breached the covenant of good faith and fair dealing through their policy to charge sales tax on Baby and Toddler Products despite no such tax being owed under Title XIV Section 212.08(7), *et seq*. The imposition of a tax specifically exempted under Florida law constitutes an evasion of the spirit of the bargain and abuse of the power to specify terms.

90.     The Uniform Commercial Code § 2-301 states "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract."

91.     Under Florida law, each sale of goods and products establishes an implied-in-fact contract in which the buyer agrees to pay the requisite price, in addition to associated taxes required by law, and the seller agrees to provide the agreed upon product in exchange for payment.

92.     Defendants breached the terms of the implied contract by charging sales tax on their Baby and Toddler Products despite no such tax being owed under Title XIV Section 212.08(7), *et seq*.

93.     Plaintiff and members of the Class have sustained damages as a result of Defendants' breach of the implied sales contract.

94.     Plaintiff seeks relief including actual damages and any other relief the Court deems necessary and proper.

## COUNT IV
## UNCONSCIONABILITY
### *(On Behalf of Plaintiff and the Class against Defendants)*

95.     Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

96.     Plaintiff brings this claim on behalf of herself and the Class.

97.     Defendants' policy to charge what they represent is a sales tax on their Baby and Toddler Products when, in fact, no such tax is owed under Title XIV Section 212.08(7), *et seq.* is substantively and procedurally unconscionable. Defendants did not and do not attempt to notify customers that the Baby and Toddler Products are exempt from Florida state sales tax pursuant to Title XIV Section 212.08(7), *et seq.* before charging sales tax on the Baby and Toddler Product.

98.     Defendants used, and continue to use, their undue discretionary power to determine and impose additional charges they represent are required, applicable taxes even at a time when Florida state law specifically exempts Baby and Toddler Products from sales tax.

99.     The implied-in-fact contract established during the retail transaction governs the transactions at issue. The agreement establishes that Plaintiff will pay the price of the product and any associated taxes or fees charged by the merchant

26

in exchange for the product. Defendants, parties of vastly superior bargaining strength, establish the price of the product, which of the taxes required by law will be passed on to the consumer, and what additional fees will be charged.

100.    In choosing to list and charge the additional amount paid by Plaintiff as a "tax" and not as a fee or an increase in the price of the product, Defendants misrepresented the nature of the charge and denied Plaintiff the opportunity to fairly assess the price of the product.

101.    Considering the great business acumen and experience of Defendants in relation to Plaintiff and the members of the Class, the great disparity in the parties' relative bargaining power, the complexity of the tax code at issue, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, and similar public policy concerns, this provision is unconscionable and, therefore, unenforceable as a matter of law.

102.    Plaintiff and members of the Class have sustained damages as a result of Defendants' unconscionable policies and practices as alleged herein.

103.    Plaintiff seeks relief including actual damages and any other relief the Court deems necessary and proper.

## COUNT V
## CONVERSION
### *(On Behalf of Plaintiff and the Class against Defendants)*

104.    Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

105.    Plaintiff brings this claim on behalf of herself and the Class.

106.    Defendants had, and continue to have, a duty to charge Plaintiff the agreed upon price of the product along with the applicable taxes and to prevent overcharges on any purchases.

107.    Defendants wrongfully collected, and continue to collect, monies from Plaintiff under the auspices of collecting required sales and use tax on purchases of Baby and Toddler Products, despite such products being exempted from such tax pursuant to Title XIV Section 212.08(7), *et seq.*

108.    Defendants, without proper authorization, assumed and exercised, and continue to assume and exercise, the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

109.    Defendants intended to permanently deprive Plaintiff and the members of Class of these funds and continue to deprive Plaintiff and the Class of these funds.

110.    These funds are properly owned by Plaintiff and the members of the Class, not Defendants, which have taken control of Plaintiff's monies without legal basis.

111.    Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

112.    Defendants have wrongfully converted these specific and readily identifiable funds.

113.    Defendants' wrongful conduct is continuing.

114.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered, and continue to suffer, damages.

115.    By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Defendants all damages and costs permitted by law, including all amounts that Defendants have wrongfully converted.

## COUNT VI
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. §§ 501.201, *et seq.*
### *(On Behalf of Plaintiff and the Proposed Class)*

116.    Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

117.    FDUTPA states "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

118.    By marketing, making available for sale, selling, and distributing Baby and Toddler Products, Defendants engaged in "trade or commerce" as defined by the FDUTPA. *See* Fla. Stat. § 501.203(8).

119.    Defendants violated and continue to violate this statute, and committed and continues to commit, unfair or deceptive acts or practices in the conduct of trade or commerce, as alleged herein, including, by routinely charging and collecting from consumers Florida sales and use tax on tax exempt Baby and Toddler Products while omitting material information concerning the products' tax-exempt status under Title XIV Section 212.08(7), *et seq.*

120.    Defendants either knowingly or recklessly misrepresented the taxable nature of the tax-exempt Baby and Toddler Products when they charged for and collected sales and use tax at the time of purchase. Defendants did so by making false and misleading representations about the products, including by itemizing a sales and use tax line item on the receipt at the time of purchase.

121.    Plaintiff and Class Members relied on Defendants' material misrepresentations or omissions concerning the taxable status of Baby and Toddler Products which were otherwise deemed tax exempt by Florida Law.

122.    As a result, Plaintiff and Class Members paid excess and unlawful taxes on Baby and Toddler Products. Defendants overcharged consumers for their Baby and Toddler product purchases. By paying these additional and unlawful taxes, Plaintiff and Class Members were harmed.

123.    Defendants will continue to cause harm through these material misrepresentations and omissions without legal action.

124.    Plaintiff seeks relief under the statute including actual damages, injunctive relief, costs and attorneys' fees, and any other relief the Court deems necessary and proper.

## COUNT VII
## NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff and the Class against Defendants)

125.    Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

126.    Plaintiff brings this claim on behalf of herself and the Class.

127.    Defendants directly, or through their agents and employees, made false representations, concealments, and non-disclosures to Plaintiff and members of the Class regarding the sales tax charged on their Baby and Toddler Products purchased in Florida. Defendants represented that Plaintiff and Class Members owed sales tax on Baby and Toddler Products, which they did not. Defendants thus made false representations to Plaintiff and Class Members.

128.    Defendants did not exercise reasonable care when making these representations. Defendants should have known that the representations they made regarding sales tax on Baby and Toddler Products were false.

129.    Defendants directly, or through their agents and employees, made false representations, concealments, and non-disclosures to Plaintiff and members of the Class regarding what they charged on their Baby and Toddler Products purchased in Florida. Defendants represented that Plaintiff and Class Members owed sales tax on Baby and Toddler Products, which they did not. Defendants thus made false representations to Plaintiff and Class Members.

130.    Defendants owed a duty of care to Plaintiff and members of the Class in providing accurate information, as evidenced by Defendants' pecuniary interest in the transactions. Indeed, Defendants had a special relationship with Plaintiff and members of the Class through representations regarding the tax burden associated with their products.

131.    The Florida tax code imposes a duty upon Defendants to correctly calculate and collect sales taxes on products they sell.

132.    Defendants intended to induce Plaintiff and Class Members to rely on Defendants' misrepresentations regarding the sales tax owed on Baby and Toddler Products.

133.   Plaintiff and Class Members justifiably relied on Defendants' misrepresentations regarding sales tax.

134.   As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive statements, representations, and omissions, Plaintiff paid additional and unlawful charges for the Baby and Toddler Products.

135.   Plaintiff suffered pecuniary injury in paying Defendants for a charge they represented as a sales tax on Baby and Toddler Products that she was not required to pay.

136.    Plaintiff and members of the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VIII
### NEGLIGENCE
*(On Behalf of Plaintiff and the Class Against Defendants)*

137.   Plaintiff incorporates by reference paragraphs 1-59 of this Complaint and restates them as if fully set forth herein.

138.   Defendants owe a duty under common law to Plaintiff and members of the Class to exercise reasonable care in abiding by Florida law exempting Baby and Toddler Product purchases from sales tax.  This includes a duty of care by Defendants to ensure their sales associates exercise reasonable care in abiding by Florida law exempting Baby and Toddler Product purchases from sales tax.

139.    Defendants owe a duty of care to Plaintiff and the proposed Class members to ensure that reasonable computer and sales systems consistent with Florida law and industry standards are maintained to exempt, collect, or remit the proper amount of sales tax at the time of Baby and Toddler Product purchases.

140.    Defendants' duty arises from each of the following instances described herein: (i) soliciting Plaintiff and proposed Class members' business; (ii) accepting Plaintiff and proposed Class members' business and purchases; and/or (iii) collecting Plaintiff and proposed Class members' payment for purchases. Defendants engage in these practices as part of their regular business.

141.    Defendants exercise control over their computer and sales systems, therefore Defendants were most capable of preventing the continuous harm caused by their routine overcharge of sales tax on Baby and Toddler Products.

142.    Plaintiff and members of the Class were neither in a position to nor expected to know the tax code at the time of every purchase of tax-exempt Baby and Toddler Products.

143.    Plaintiff and members of the Class trusted and expected Defendants to calculate and charge the appropriate amount of sales tax and exempt from tax any tax-exempt Baby and Toddler Products.

144.    Defendants knew or should have known that their routine practice of charging Plaintiff and members of the Class sales tax on tax exempt Baby and

Toddler Products would cause harm. Specifically, Defendants knew or should have known that their practice would cause the type of harm the Florida legislature intended to prevent.

145.   As a direct and proximate result of Defendants' negligence, Plaintiff and members of the Class have suffered and will continue to suffer injury or harm, including their overpayment of sales tax on tax exempt Baby and Toddler Products.

146.   Further, as a direct and proximate result of Defendants' negligence, Plaintiff and members of the Class are entitled to recover actual, consequential, and nominal damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the proposed Class, prays for an Order granting relief and judgment against Defendants as follows:

a.   declaring this action to be a proper class action, appointing Plaintiff and Plaintiff's counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

b.   enjoining Defendants from charging Florida state sales and use tax on the Baby and Toddler Products sold in Florida;

c.     directing Defendants to adopt and implement policies, procedures and safeguards sufficient to prevent future misconduct to audit and correct miscalculations of sales tax made by the point-of-sale system;

d.     directing Defendants to adopt and implement policies, procedures and safeguards sufficient to prevent future misconduct ensuring that all employees authorized to use the point-of-sale systems in Florida have training to identify and to remove miscalculated sales tax charges;

e.     awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy the past conduct of Defendants;

f.     requiring Defendants to pay restitution, including interest thereon, to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice or a violation of law, plus pre- and post-judgment interest thereon;

g.     requiring Defendants to disgorge or return, including interest thereon, all monies, revenues, and profits obtained by means of any

wrongful or unlawful act or practice, including disgorgement of applicable interest on the monies returned;

h.      awarding Plaintiff and the Class appropriate relief, including applicable statutory damages and penalties, and actual and punitive damages;

i.      awarding Plaintiff and the Class the costs of prosecuting this action, including expert witness fees;

j.      awarding Plaintiff and the Class attorneys' fees and costs as allowable by law;

k.      awarding pre-judgment and post-judgment interest; and

l.      granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


DATED: February 23, 2026                    Respectfully submitted,


                                            <u>/s/ Jonathan B. Cohen</u>
                                            Jonathan B. Cohen (FL Bar No. 27620)
                                            **BRYSON HARRIS SUCIU &**
                                            **DEMAY PLLC**
                                            3833 Central Avenue
                                            St. Petersburg, FL 33713
                                            Tel: (813) 786-8622
                                            jcohen@brysonpllc.com

                                            James R. DeMay*
                                            **BRYSON HARRIS SUCIU &**
                                            **DEMAY PLLC**
                                            900 West Morgan Street
                                            Raleigh, NC 27603
                                            Tel: (704) 941-4648
                                            jdemay@brysonpllc.com

                                            Jason P. Sultzer*
                                            **SULTZER & LIPARI PLLC**
                                            85 Civic Center Plaza, Suite 200
                                            Poughkeepsie, NY 12061
                                            Tel: (845) 483-7100
                                            Fax: (888) 749-7747
                                            sultzerj@thesultzerlawgroup.com

                                            David J. Tayar*
                                            **TAYAR SHUMAN & ASSOCIATES LLP**
                                            3324 Parsons Blvd, Ste. 3F
                                            Flushing, NY 11354
                                            Tel: (917) 750-7740
                                            dtayar@tayarshuman.com

Will Shuman*
**TAYAR, SHUMAN & ASSOCIATES LLP**
3324 Parsons Blvd, Ste. 3F
Flushing, NY 11354
Tel: (202) 415-8207
wshuman@tayarshuman.com

Charles Schimmel, Esq.*
**SULTZER & LIPARI PLLC**
1800 Gaylord
Denver, CO 80206
Tel: (913) 634-6762
schimmelc@thesultzerlawgroup.com

Scott E. Silberfein*
**SULTZER & LIPARI PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (914) 356-0061
silberfeins@thesultzerlawgroup.com

*Pro hac vice forthcoming*

**DEMAND FOR PRESERVATION**

PLEASE TAKE NOTICE that THE TJX COMPANIES, INC. & MARMAXX OPERATING CORP., d/b/a T.J. MAXX and MARSHALLS shall not destroy, conceal or alter in any manner whatsoever any or all evidence, records, documents, physical or electronic data, and/or other tangible items pertaining to or relevant to property discoverable in the referenced matter, and must make all efforts to preserve such material.

This notice applies to any on- and off-site computer systems and removable electronic media, plus all computer systems, services, and devices (including all remote access and wireless devices) used for your overall operation. This includes, but is not limited to, e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data. Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, codes keys and other support information needed to fully search, use, and access the electronically stored information.

Electronically stored information (hereinafter "ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

· Digital communications (e.g., e-mail, voice mail, instant messaging);
· Word processed documents (e.g., Word or WordPerfect documents and drafts);
· Spreadsheets and tables (e.g., Excel or Lotus 123 worksheets);
· Accounting Application Data (e.g., QuickBooks, Money, Peachtree data files);
· Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);
· Sound Recordings (e.g., .WAV and .MP3 files);
· Video and Animation (e.g., .AVI and .MOV files);
· Databases (e.g., Access, Oracle, SQL Server data, SAP);
· Contact and Relationship Management Data (e.g., Outlook, ACT!);
· Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);
· Online Access Data (e.g., Temporary Internet Files, History, Cookies);
· Presentations (e.g., PowerPoint, Corel Presentations);
· Network Access and Server Activity Logs;
· Project Management Application Data;
· Computer Aided Design/Drawing Files; and,
· Back Up and Archival Files (e.g., Zip, .GHO)

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

· Purging the contents of e-mail repositories by age, capacity or other criteria;

· Using data or media wiping, disposal, erasure or encryption utilities or devices;
· Overwriting, erasing, destroying or discarding back up media;
· Re-assigning, re-imaging or disposing of systems, servers, devices or media;
· Running antivirus or other programs effecting wholesale metadata alteration;
· Releasing or purging online storage repositories;
· Using metadata stripper utilities;
· Disabling server or IM logging; and,
· Executing drive or file defragmentation or compression programs.

In order to assure that your obligation to preserve documents and things will be met, please forward a copy of this letter to any and all persons and entities with custodial responsibilities for the items referred to herein. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.